O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHOPINDER DHILLON; REENA DHILLON; ANITA PAMPALON; RICHARD PAMPALON; SANGITA LAL; RAJ LAL; JACK SEKHON; PRAVEENA GIANNOULIS,<br><br>Plaintiffs,<br><br>v.<br><br>PRINCESS CRUISE LINES, LTD, | Case No.  2:20-CV-11661-GJS<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Dkt. 64, 65] |

Presently before the court are cross motions for summary judgment, one filed by Defendant Princess Cruise Lines, Ltd. ("Defendant"), and the other filed by Plaintiffs Bhopinder Dhillon, Reena Dhillon, Anita Pampalon, Richard Pampalon, Sangita Lal, Raj Lal, Jack Sekhon, and Praveena Giannoulis (collectively, "Plaintiffs").  (Dkt. 64, 65.) Having considered the submissions of the parties, the court adopts the following Order.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I. BACKGROUND**

On February 11, 2020, Plaintiffs departed from San Francisco and set sail to Puerto Vallarta aboard the *Grand Princess*, a cruise ship operated by Defendant (the "Mexico Cruise"). Plaintiffs assert that during the Mexico Cruise, they began to exhibit symptoms of COVID-19, and suffered severe injuries thereafter.

On December 28, 2020, Plaintiffs filed a lawsuit against Defendant, asserting two causes of action for negligence and gross negligence. (Dkt. 1.)[1]

**A. Discovery of COVID-19 and Early Public Health Guidance**

On December 31, 2019, the World Health Organization (WHO) was informed of cases of pneumonia of unknown etiology detected in Wuhan City, Hubei Province of China. (Dkt. 64-46, Tarling Declaration ("Decl."), Ex. 1.) On January 5, 2020, WHO issued its first Disease Outbreak News report on COVID-19, detailing the number of cases and their clinical status, China's response measures, and WHO's risk assessment and advice. (*Id.*; *see* Dkt. 64-45, Tarling Decl. ¶ 8.) On January 9, 2020, WHO issued a statement indicating that Chinese authorities had made a preliminary determination of a novel coronavirus called SARS-CoV-2, in these pneumonia-like illnesses. (Dkt. 64-47, Tarling Decl., Ex. 2.)

In mid-January 2020, WHO and Centers for Disease Control and Prevention ("CDC") developed guidance to detect and prevent the spread of COVID-19. On January 17, 2020, CDC issued Interim Guidance for Healthcare Professionals indicating the

---

[1] The court acknowledges that Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law does not meet the strict requirements of Local Rule 56-1. (*See* Dkt. 65-2.) As Defendant points out in their Statement of Genuine Disputes, (Dkt. 72-1), Plaintiffs primarily describe exhibits rather than state specific facts that Plaintiffs contend are undisputed. (*See* Dkt. 65-2 ¶¶ 33-84.) Moreover, Plaintiffs cite to numerous exhibits that do not support the underlying propositions for which they are cited. (*See id.* ¶¶ 11-20.) Nevertheless, the court has done its best to determine facts truly in dispute based on the parties' briefing.

clinical criteria for a patient under investigation ("PUI") for COVID-19. (Dkt. 64-48, Tarling Decl., Ex. 3.) The CDC advised that an individual was considered a PUI if the person had (1) fever and symptoms of lower respiratory illness (e.g., cough, difficulty breathing), and (2) had traveled from Wuhan City, China in the 14 days before symptom onset, or, had close contact with a person under investigation for COVID-19 while that person was ill. (*Id.*) CDC maintained this approach for identifying cases in its February 1, February 10, and February 13, 2020 guidance. (*See* Dkt. 64-50, Tarling Decl., Ex. 5; Dkt. 64-51, Tarling Decl., Ex. 6; Dkt. 64-36, Nair Decl., Ex. F.)

Beginning January 23, 2020, Carnival Corporation, Defendant's indirect parent, issued "Instructional Notices" establishing policy to be adapted and implemented by each of its cruise lines, including Defendant, to implement CDC guidance and screen passengers for COVID-19 by asking about travel to China and certain flu-like symptoms. (Dkt. 64-45, Tarling Decl. ¶ 30; *id.*, Ex. 8.)

On March 11, 2020, WHO declared COVID-19 a pandemic. (Tarling Decl. ¶ 51.)

**B. The Hawaii Cruise**

On January 28, 2020, 2,580 passengers and 1,092 crew members sailed on a separate voyage on the *Grand Princess* from San Francisco to Hawaii (the "Hawaii Cruise"). (Dkt. 65-4, Lal Decl. ¶ 12, Ex. 11.) When the Hawaii Cruise ended, Defendant's Senior Doctor, Dr. Nadia Nair, reported to the CDC that nine passengers and eleven crew members presented with influenza-like-illnesses ("IL") during the cruise. (*Id.*) Dr. Nair attributed the number of ILI cases to the fact that it was influenza season in California, but otherwise concluded that none of the individuals who presented to the medical center during the cruise were PUIs for COVID-19 pursuant to the CDC's guidance. (Dkt. 64-30, Nair Decl. ¶¶ 9-12; Tarling Decl. ¶¶ 39-40.) At the end of the Hawaii Cruise, thirty-six passengers and most crew remained on the *Grand Princess* for the Mexico Cruise. (Nair Decl. ¶ 12; Tarling Decl. ¶ 46.) According to Defendant, "[n]one of these

3

1  passengers or crew who remained on the *Grand Princess* . . . met the CDC criteria for

2  suspected or confirmed cases of COVID-19."  (Nair Decl. ¶ 13; Tarling Decl. ¶¶ 40, 46.)

3  **C.  The Mexico Cruise**

4  The Mexico Cruise comprised of 2,562 passengers and 1,108 crew members.

5  (Lal Decl. ¶ 13, Ex. 12.)  Dr. Nair, who also acted as Medical Director on the Mexico

6  Cruise, reported to the CDC that nine passengers and thirteen members presented

7  symptoms of ILIs on the Mexico Cruise.  (*Id.*)  Pursuant to CDC guidance, there were no

8  passengers or crew on the Mexico Cruise with suspected or confirmed cases of COVID-

9  19.  (Nair Decl. ¶¶ 7-16; Tarling Delc. ¶¶ 41-43.)  On March 4, 2020, CDC issued a "No

10 Sail and Information Request Order" indicating there were eleven "presumptive positive

11 cases of COVID-19 among persons who were onboard" the *Grand Princess* during the

12 Mexico Cruise.  (Lal Decl. ¶ 2, Ex. 1.)

13 **D.  The Parties' Cross Motions for Summary Judgment**

14 The parties filed cross-motions for summary judgment on January 7, 2022.

15 (Dkt. 64, 65.)  Plaintiffs move for summary judgment with respect to their negligence

16 claim.  Defendant moves for summary judgment with respect to Plaintiffs' negligence

17 and gross negligence claims.

18 **II. LEGAL STANDARD**

19 Summary judgment is appropriate where the pleadings, depositions, answers to

20 interrogatories, and admissions on file, together with the affidavits, if any, show "that

21 there is no genuine dispute as to any material fact and the movant is entitled to judgment

22 as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the

23 initial burden of informing the court of the basis for its motion and of identifying

24 portions of the pleadings and discovery responses that demonstrate the absence of a

25 genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All

26 reasonable inferences from the evidence must be drawn in favor of the nonmoving party.

27 *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986).  If the moving party does not

28

bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

## III. DISCUSSION

Plaintiffs contend that Defendant's negligence caused Plaintiffs to contract COVID-19 during the Mexico Cruise.  The *prima facie* elements for a maritime negligence cause of action are defined similarly to the common law. *Prince v.* Thomas, 25 F. Supp. 2d 1045, 1047 (N.D. Cal. 1997).  Thus, to recover for negligence, a plaintiff must show (1) a duty, (2) a breach of that duty, (3) a causal connection between the offending conduct

and the resulting injury, i.e., proximate cause, and (4) damages.  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070 (9th Cir. 2001).

Although the parties dispute whether Plaintiffs have demonstrated the first, second, and fourth elements of Plaintiffs' claim, the parties' discussion with the court during oral argument mainly concerned whether Plaintiffs met their burden of proof with respect to causation.  Defendant contends that Plaintiffs have not, and cannot, establish that Defendant's purported breach caused Plaintiffs to contract COVID-19 on the *Grand Princess*.  Particularly fatal to Plaintiffs' claim, Defendant argues, is the absence of admissible expert testimony as to medical causation.

The court agrees that certain cases warrant the introduction of expert testimony, such as when an element of a claim calls for information that is outside an ordinary person's common knowledge.  *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (holding that a plaintiff must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference); *Northrup v. Covidien, LP*, No. EDCV 20-00355 DDP (SPx), 2021 WL 5507217, at *5 (C.D. Cal. Nov. 24, 2021) ("With respect to negligence claims, courts have . . . concluded that plaintiffs cannot meet their burden to show a violation of the standard of care, let alone causation, without expert proof."); *Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 1003 (C.D. Cal. 1996) (granting summary judgment for defendants because plaintiff presented no experts that could show medical causation and rejecting plaintiff's proposal to let a jury use its "common sense" to infer causation from a temporal relationship between plaintiff's exposures and symptoms).

The parties do not dispute the need for expert testimony given the complex nature of COVID-19, and the fact that symptoms associated with COVID-19 substantially overlap with symptoms of other diseases, including the common cold, influenza, and numerous other viral and bacterial infections.  (*See* Dkt. 64-11, Goldmann Report at 9; Dkt. 78, Pls.' Reply at 2-3.)  Because numerous potential causes account for the symptoms

6

of COVID-19, a trier of fact must rely on more than common sense to draw inferences that rise beyond the speculative level regarding exactly where and when the exposure occurred, and whether Plaintiffs' symptoms were the product of COVID-19 or some other illness.  Ultimately, "the alleged mechanisms of causation are beyond the experience of laypeople," and thus, Plaintiffs cannot establish causation absent such expert testimony.  *Sanderson*, 950 F. Supp. at 1003.

Plaintiffs, however, have no expert testimony to support causation.  Although Plaintiffs offer the expert report of Dr. Barry Fox to support their theory of medical causation, Plaintiffs failed to timely designate their expert witnesses under Federal Rule of Civil Procedure 26(a).  Such experts included the testimony and expert report of Dr. Fox.  Finding that Plaintiffs' violation was neither substantially justified nor harmless, this Court denied Plaintiffs' motion to file the late designation of their expert witnesses. (Dkt. 85.)  Plaintiffs are therefore precluded from using the reports of such experts to supply evidence in their motion for summary judgment or in opposition to Defendant's motion for summary judgment.  *See* Fed. R. Civ. P. 38(c).

Additionally, Plaintiffs appear to believe that the statements in their own declarations serve as evidence of causation.  However, in the absence of expert testimony, Plaintiffs' declarations are speculative at best.  Plaintiffs contend that their testimony demonstrates that Plaintiffs more likely than not, contracted COVID-19 on the *Grand Princess* as opposed to prior to embarkation.  (Plfs. Motion at 21; Opp at 24, 31.) Plaintiffs state that they "did not come in contact with any persons of Chinese origin travelling from either Wuhan China or China in general . . . or any person who may have travelled on International Airlines," that Plaintiffs only had contact with their family members and drivers who drove them to the airport, and that Plaintiffs "did not come in contact with any one who was coughing or had any signs of Influenza or . . . fever." (*See, e.g.*, B. Dhillon Decl. ¶¶ 2, 4, 13; Sekhon Decl. ¶¶ 10-13; P. Giannoulis Decl. ¶¶ 10-13.) However, Plaintiffs' bare observations lack foundation.  As Defendant argues in their

7

evidentiary objections to Plaintiffs' declarations, Plaintiffs "do not explain, and cannot explain, how Plaintiffs could possibly know that *no one* they encountered during this period had recently travelled from China or other international destinations." (Dkt. 77-2, Def.'s Objs. to Decls. at 10.)  Nor do Plaintiffs explain how they could have known every point of embarkation and transit routes of every person they encountered while traveling to their port of departure.  (*Id.*)  Because Plaintiffs do not provide a sufficient basis to conclude that they did not encounter any person with COVID-19 prior to embarkation, Plaintiffs' statements are not facts the court may consider on a motion for summary judgment.  *See Hawes v. Pac. Gas & Elec. Co.*, No. EDCV 16-1623-DMG (KK), 2018 WL 5270499, at *4 (C.D. Cal. June 25, 2018).

Plaintiffs further attest that they, along with other *Grand Princess* crew members, exhibited ILI-symptoms on the Mexico Cruise, and thus Plaintiffs' symptoms likely were the product of COVID-19.  Plaintiffs testify that several days into the Mexico Cruise, Plaintiffs experienced "headaches," "coughing," "fatigue," "sneezing," "shortness of breath," and "fever."  (*See* Giannoulis Decl. ¶ 23; Sekhon Decl. ¶ 25; B. Dhillon Decl. ¶¶ 36-37; R. Dhillon Decl. ¶¶ 24, 26.)  Additionally, Plaintiffs observed crew members "coughing," "sneezing," "fatigue[d]" and "feverish."  (*See* Giannoulis Decl. ¶ 23; Sekhon Decl. ¶ 18; B. Dhillon Decl. ¶ 19; R. Dhillon Decl. ¶ 7; A. Pampalon Decl. ¶ 22; S. Lal Decl. ¶ 23.)[2]  Plaintiffs' testimony constitutes improper lay opinion to the extent they rely on

---

[2] Plaintiffs also contend that crew members assigned to clean their rooms told Plaintiffs they were sick and were sharing their rooms with individuals who had previously contracted COVID-19 on a different cruise ship, while other Plaintiffs attest that they were informed by crew members that certain staff were absent due to illness.  (S. Lal. Decl. ¶ 25; R. Lal. Decl. ¶ 5; R. Pampalon Decl. ¶ 24; A. Pampalon Decl. ¶ 22; B. Dhillon Decl. ¶ 19; Sekhon Decl. ¶¶ 19, 21.)  Such statements are inadmissible hearsay under Federal Rules of Evidence 801 and 802, and thus do not constitute proper summary judgment evidence.  (Dkt. 72-3; *see* Fed. R. Civ. P. 56(c).)  In any event, even if these statements were admissible, Plaintiffs run into the same problem as discussed above. The record is devoid of medical evidence a trier of fact could rely on to discern whether

such evidence to establish they contracted COVID-19 on the *Grand Princess*. Plaintiffs are not qualified experts in the medical field. While their own statements may be used to establish their own symptoms, to the extent they purport to establish the cause of Plaintiffs' injuries or diagnose the illnesses of crew members, their testimony constitutes inadmissible lay opinion. *See* Fed. R. Evid. 701. [3]

Having reviewed all of the Exhibits and Declarations Plaintiffs filed in support of their Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, the court has not identified any other evidence that could be construed as attempting to establish that Plaintiffs contracted COVID-19 on the *Grand Princess*. As such, Plaintiffs have not provided sufficient evidence to create a material issue of fact regarding causation.

Because Plaintiffs have not met their burden of proof as to the element of causation, Defendant is entitled to summary judgment with respect to Plaintiffs' negligence and gross negligence claims.

///

///

///

---

any of the crew members had COVID-19, or whether Plaintiffs were exposed to COVID-19 by these individuals.

[3] It also appears that four of the eight Plaintiffs cannot confirm from any test result that they were positive for COVID-19 or that they obtained a COVID-19 diagnosis from a medical professional. (*See* Dkt. 64-1, Mot. at 9.) Instead, those Plaintiffs rely on their own belief that they contracted COVID-19 on the *Grand Princess*. (*See, e.g.*, A. Pampalon Decl. ¶¶ 34-37; R. Pampalon Decl. ¶¶ 36-37 ("I believe that I was COVID 19 positive but recovered over a time frame."); R. Lal Decl. ¶¶ ("My test results came negative . . . but I am certain too much time had passed for the positive test to be effective."); S. Lal Decl. ¶ 40 ("Even though I tested negative, I believe that I was COVID 19 positive but recovered over a time frame.").) As stated above, Plaintiffs are not qualified to opine on their own medical diagnosis. For this additional reason, summary judgment is warranted.

**IV. CONCLUSION**

       For the reasons stated above, Defendant's motion for summary judgment is GRANTED.  Plaintiffs' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: February 18, 2022

                                       DEAN D. PREGERSON
                         UNITED STATES DISTRICT JUDGE

10